# STUART H. FINKELSTEIN
*Attorney at Law*
338 Jericho Turnpike
Syosset, New York 11791
(718) 261-4900

February 4th, 2022

Judge Robert W. Lehrburger
Southern District of New York
United States District Court
500 Pearl Street - Courtroom 18D
New York, New York 10007

          Re: Antolini vs. Brue, et al
             No.: 1:22-cv-00730-PAE-RWL

Dear Judge Lehrburger,

Plaintiff and his counsel submit this letter in response to the Court's Order of February 1, 2022 directing Plaintiff to explain why this instant matter should not be dismissed for violation of 21-CR-217. Plaintiff and his counsel are thankful for the opportunity to do so. The Court has inquired as to whether this action may persist in accord with bail conditions originally set forth in 1:19-mj-1064, Dkt. No. 6. The relevant condition establishes that Plaintiff's counsel "is not to initiate New ADA actions." *See* 1:19-mj-1064, Dkt. No. 6 at 4. Importantly, neither Plaintiff nor his counsel have violated the above provision, or any other governing law, rule, or regulation. It is respectfully submitted that the above provision has not been violated because the instant matter is not a "new action" such that it does not fall within the parameters of the provision. Further, because of the nature of this specific case, the action should be maintained such that the public accommodations premises at issue may finally cease its discriminatory practices.

## Factual Background

By way of background, on November 27, 2018 Plaintiff Dino Antolini, represented by his lawyer Stuart H. Finkelstein Esq., filed his Complaint (hereinafter, the 'November 2018 complaint') for violations of the Americans with Disabilities Act at a place of public accommodations known as a restaurant "Empellon' located at 230 West 4th Street, New York, NY 10014, against seven of the same nine defendants named herein. *See* Dkt. No. 11 at 1. An answer was never interposed by defendants and no motion practice ensued. Instead, the defendants' attorney, Ben Levine, Esq., declared in a letter of February 6, 2019, unequivocally, <u>that the remediations of the facility had been performed</u>. *See* Dkt. No. 11, Exhibit 1. Relying upon Mr. Levine's representations in his letter, Plaintiff and his counsel agreed to voluntarily dismiss the action pursuant to Fed. R. Civ. P. 41(a)(l)(A)(i), without prejudice. *See* 1:18-cv-11070-GBD [Dkt. No. 26].

Despite Mr. Levine's representations and Plaintiff's good faith acceptance of same, in September, 2021 Plaintiff Antolini attempted to gain access to the same facility and was again denied access to the restaurant Empellon because of the very same barriers encountered at his previous attempt in October of 2018. *See* Dkt. No. 11 at 1-2. Plaintiff spoke with his attorney Stuart Finkelstein who attempted to contact Counsel Levine numerous times both by phone and by email, but to no avail. *Id.* at 2. Plaintiff's Counsel subsequently filed a motion to the Court to file his amended Complaint, however Plaintiff's Motion was denied because the case had been voluntarily dismissed. *See* 1:18-cv-11070, [Dkt. No. 29].

After deliberation between Plaintiff and his counsel, the decision was made to re-file the action, (the 'January 2022 Complaint') incorporating two new properly named defendants and one additional factual allegation regarding Plaintiff's September 2021 attempt to visit the restaurant. *See* Dkt. No. 11 at 6. Other than those changes, the Complaint reincorporates the exact same

claims & causes of action as the original November 2018 Complaint. As such, this case is based primarily on the transaction of events stemming from before the bail condition was put in place.

### This Action is Not "New"

This case presents the following question:

> When a civil rights Plaintiff files an ADA Title III claim alleging inaccessibility discrimination at a specific place of public accommodation and voluntarily dismisses the case based on the defendants' representations about the cessation of the discrimination, and subsequently the Plaintiff learns that those representations were false, is the re-filing of his original causes of action in a second complaint considered a 'New Action?' For the reasons substantially set forth, the answer is No.

The Supreme Court has explained that the "development of new material facts can mean that a new case and an otherwise similar previous case **do not** present the same claim." *Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292, 2305 (2016). Importantly, a later suit cannot be said to be a 'new action' when the later suit "involve[s] the same cause of action" as the earlier suit. *See EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks omitted). "Suits involve the same claim (or 'cause of action') when they arise from the same transaction, or involve a common nucleus of operative facts. *Lucky Brand Dungarees v. Marcel Fashions Grp.*, 140 S. Ct. 1589, 1595 (2020) (citations omitted). In determining what constitutes the same transaction, occurrence, or series of transactions or occurrences," a court must approach the question "on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., USA*, 596 F.Supp.2d 821, 826 (S.D.N.Y. 2008).

An action may not be 'new' where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim. In *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 112–14 (2d Cir. 2000), the Second Circuit held that a plaintiff did not allege sufficient post-first-action conduct to show that the second action was a 'new case', where the first action was between the same parties, had been mostly based on the same factual predicate, and had been dismissed after settlement. *Id.* at 113. In his first action, the plaintiff sued the village for discriminatory enforcement of the zoning code. *Id.* at 107. In his second action, the plaintiff "sought total dissolution of the village" under the Establishment Clause. *Id.* at 108. The plaintiff included allegations of some conduct that occurred after the first action and argued that his second action was "really 'based upon' things that have happened since the filing of the prior suit [ ]." *Id.* at 112–13. Although recognizing that "legally significant acts occurring *after* the filing of a prior suit" *may* prevent the application of *res judicata*, *id.* at 113, the *Waldman* Court held that the facts post-dating the first action did "not create a 'new' cause of action that did not exist when the prior suits were brought," because "[t]he new allegations made in the [subsequent] complaint [did] not, either by themselves or to any degree not already demonstrated by the overlapping facts, establish the sort of pervasive and otherwise irremediable entanglement between church and state that would justify a drastic remedy like the dissolution of the Village." Id at. 113. <u>In essence, the court held that Waldman's claim in *Waldman II* was principally based upon the common nucleus of operative facts **shared with** *Waldman I*. *Id.*</u> The Court concluded that "the subsequently asserted claims in the second complaint were "<u>nothing more than additional instances of what was previously asserted</u>" and therefore, could not constitute a 'new case.' *Id.*

The Second Circuit's recent holding in *Cayuga Nation v. Tanner*, 6 F.4th 361, 377 (2d Cir. 2021) does not command a different result. In *Cayuga Nation*, an Indian tribe brought suit in 2014 seeking a declaratory judgment that the Indian Gaming Regulatory Act (IGRA) preempted the local municipality's anti-gaming laws. 6 F.4th at 372. The municipality argued that it could not be sued because there was a prior litigation in 2003; that the 'same case' was already litigated.

*Id.* The Court held that the 2014 case was a 'new case' from the 2003 case because the 2014 litigation "arises out of facts that have accumulated since the first action [...]." The Second Circuit addressed *Waldman* directly:

> "Our decision in [*Waldman*] was premised on the fact that the incidents giving rise to the claims at issue in the third <u>complaint had already occurred when the prior complaints were filed</u>. *Id.* at 110-12. We therefore concluded that Waldman could not avoid preclusion merely by including some new facts while also "claim[ing] that the Village [of Kiryas Joel] may be dissolved *solely* on the basis of facts that have existed for over two decades." *Id.* at 112. In contrast, as we held in *Computer Associates*, [126 F.3d 365, 369-370 (2d Cir. 1997)], "[w]**ithout a demonstration that the conduct complained of in the [second] action occurred prior to the initiation of the [first] action, [the notion that the second action is the 'same case'] is simply inapplicable**." 126 F.3d at 369. As already discussed, the claims in this case arise out of events that entirely postdate the 2003 Complaint. Consequently, *Waldman* is inapposite." *Id.* at 377.

Entirely consistent with the binding precedent, this matter **is <u>not</u> a new action**. See Dkt. No. 11 at 6 ¶ 24 ("This instant (Second) Complaint alleges all of the allegations previously pleaded in Plaintiff's original Complaint and in his filed Amended Complaint."). Like in *Waldman*, the conduct complained of in the second action occurred prior to the initiation of the first action. The claim in the first filed complaint (the 'November 2018 Complaint') is based upon the common nucleus of operative facts <u>shared with</u> the operative Complaint before this Court. In October 2018, Plaintiff was denied access to Empellon because of insurmountable barriers, in violation of federal law (the ADA), state law (New York State Human Rights LAW), and local law (New York City Human Rights law). *See* November 2018 complaint at 8-15. The January 2022 Complaint reincorporates the exact same causes of action based on the exact same barriers to access, as the conduct complained of occurred prior to the initiation of the first action. *See* January 2022 complaint at 9-16; *Cayuga Nation*, 6 F.4th at 377. Any subsequently asserted facts in the January 2022 complaint are "<u>nothing more than additional instances of what was previously asserted</u>" and therefore, could not constitute a 'new case.' *Waldman*, 207 F.3d at 113.

Courts in this District have already directly understood and applied this point. *Antolini v. Rosenblum et al*, 1:19-cv-06264-LGS-JLC, 2020 WL 6638583 (S.D.N.Y. Nov. 13, 2020) (L. Schofield) is directly on point. In *Rosenblum*, Plaintiff and his counsel (same Plaintiff and counsel as in the instant action) filed a complaint on July 5, 2019 in this District for ADA violations at a West Village restaurant. Plaintiff sought leave to amend his Complaint on May 18, 2020 to supplement and correct some of the factual allegations in the original Complaint. *See* 19-cv-06264-LGS-JLC, Dkt. No. 61. Even though the bail condition had been set in December 2019, Judge Schofield had no trouble granting leave to amend in November 2020 because the transaction or occurrence of events stemmed from the original acts of discrimination by the defendants, in an action filed in June of 2019. *See Id.*; Dkt. No. 1 at 4. In essence, the bail condition had no bearing on Plaintiff's Counsel's ability to represent Plaintiff in his pursuit of his claims that arose, and were originally initiated, prior to the setting of that bail condition. *See also Antolini v. N Corporation et al*, 19-cv-07385 Dkt. No. 47 (S.D.N.Y. 2020) (K. Failla) (denying defendants' motion to stay Plaintiff's ADA claims where Plaintiff initiated action in August 2019 and there was no basis to doubt good faith nature of Plaintiff's claims).

The Court, if it all skeptical of Plaintiff's argument, would probably harken back to the fact that a distinguishing factor in this case might be that it was voluntarily dismissed by Plaintiff before the provision was imposed. *See* 1:18-cv-11070-GBD [Dkt. No. 26]. That is true of course, but it does not make this action 'new.' The voluntary dismissal only lends credence to Plaintiff's principal point: that the re-filing of an action filed before the provision was imposed, based principally on facts occurring before the provision was imposed, simply cannot be, and is not, a 'new' action. *See Ascentive, LLC v. Opinion Corp.*, 2012 WL 1569573 at *6 (E.D.N.Y. May 3, 2012) (explaining that under Second Circuits holding in *Kwan*, 634 F.3d 224 (2d Cir. 2011), it is

often the case that prospect of re-litigation of same claims is possible after voluntary dismissal without prejudice). Further, where a case has been voluntarily dismissed under Fed. R. Civ. P. 41(a) and no final judgment has been entered on the merits, pleading amendment is permissible. *See Verdi v. City of New York*, 306 F.Supp.3d 532 n. 11 (S.D.N.Y. 2018) (explaining that even though Plaintiff had voluntarily dismissed suit two years prior, amendment would be permitted where claims were neither futile or prejudicial); *see also O'Shea v. Mutual Life Ins. Co. of New York*, 226 F.Supp.2d 66 (E.D. Pa. 2002) ("[S]imply amending or supplementing the existing pleadings in accordance with Rule 15" [is a better way to] effectuate the same result she seeks through the relatively complicated procedure [of re-filing a nearly identical suit in the same court].")

It is strenuous to say that *Rosenblum* or *N Corporation* can withstand scrutiny, but this case cannot. Plaintiff seeks to redress the wheelchair barriers at the establishment, just as he did in those cases. The situation here, while admittedly procedurally more nuanced, is not truly distinguishable. The events giving rise to the action occurred prior to the initiation of the provision and Plaintiff and his counsel brought suit prior to the initiation of the provision.

Plaintiff's counsel has successfully litigated numerous other ADA actions of a similar nature to the instant matter in the past two years. It is respectfully submitted that Plaintiff's counsel has no intention of violating any applicable provision imposed upon him. Plaintiff's counsel has a wife and kids who need him very much. Plaintiff's counsel absolutely respects and abides by the provision imposed, even if he does not necessarily agree with it (meaning that Plaintiff's counsel may not 'like' the provision, but he has and will continue to abide by it). In the twenty-six months since the imposition of the provision, Plaintiff's counsel has not 1) filed any 'new' ADA actions; 2) has not been involved with any impropriety in or out of the courtroom; 3) has not violated any applicable provision imposed; 4) has not been accused of violating any provision even once. Plaintiff is ready and eager to vigorously pursue his claims, especially in light of the ongoing and pervasive discrimination at the subject facility that has been in effect since at least November 2018. Plaintiff and his counsel again thank the Court very much for the opportunity to respond to its inquiry and explain their position. Plaintiff prays that this Honorable Court allow the action to continue, in accord with the facts and law set forth.

Thank you for your attention to this matter and good health to you and yours,

Very truly yours,

Stuart H. Finkelstein

SHF/tc
To all via ECF